United States against Justin Hancock. Mr. Sullivan. Certainly. Check and see if it's gin. Check and see if it's gin. May it please the court. I'm John L. Sullivan. I represent Justin Hancock, who was the defendant below. He received a 10 year sentence from Judge Kendall for an unknown number of distributions of child pornography. Judges, the government raises two issues primarily as to a contravention of defendant's appeal. First, they argue that Judge Kendall's comment or question, anything else, at the end of the hour long or so sentencing hearing amounted to an invitation for the defendant to raise all kinds of issues and say, Judge, you haven't adequately done this, you haven't adequately done that. I argue in the brief, and I think it's an appropriate argument, that in USA v. Garcia-Segura in 2013, this court encouraged the district courts to inquire of the defendants, whether they are satisfied that the court had addressed the main arguments in mitigation. I saw that in action, and much in contrast to how Judge Kendall handled it. Shortly after Garcia-Segura came out, I had him sentencing in front of Judge Coppola out in Rockford. Very procedurally correct man. And at the end of the sentencing, I hadn't anticipated it, but he very specifically addressed me. He said, Mr. Sullivan, are there any arguments in mitigation that I have not adequately addressed? It was clear what he was asking, and it was clear that by my answer, if I said yes, which I did,  it was clear that I was waving under Garcia-Segura any argument to challenge what he was going to do on appeal. So isn't this case, I mean, sometimes if the judge just says anything else, that is so open-ended that we have cases that suggest that does not follow the spirit of what Garcia-Segura was trying to achieve. And then there are cases like the one you've just described where the judge really follows it word for word. Are there any arguments in mitigation that I should be talking about that I haven't talked about yet or anything like that? Isn't this case somewhere in between? It does seem like Judge Kendall is trying to open up a discussion. She asks about supervised release. She doesn't ask about the actual sentence, I think. That's the problem. And that's true because it actually turns out there was a problem with the supervised release, which nobody realized at the moment because when she signed the judgment and commitment order, it did not adequately reflect what was stated at the time of the sentencing. So we had to go back a month later and redo the judgment and commitment order. But I don't believe that the words anything else are halfway between the specific inquiry like Judge Capalame and the very vague opening question anything else. So if we were to agree with you, and actually I am inclined to agree with you on this waiver point, what good does that do you? She does spend a fair amount of time considering the appropriate sentence for Mr. Hancock. Puts a lot on the record, you know, the amount of the child pornography, the harm to the community and other things. And our position is that we had major arguments in mitigation that suggest that the criteria she used has been, I won't say complained of, but indicated by the sentencing commission as inadequate. But we have said that a district judge who happens to agree with what the guidelines say doesn't really need to belabor that point. The district judge, there's certainly, as you say, there's been a lot of activity about these guidelines, but we haven't put the burden on the district judge to kind of reinvent the wheel of the guidelines every time. You have not. And I'm not saying that the sentencing commission has the authority to put that burden. But in essence, the way that the Supreme Court has said that the guidelines cannot even be presumed to be reasonable. Well, that's true, but what if the judge thinks they're right? You know, which says I've thought about it and in my independent judgment, this is an appropriate sentence for you. And I think in light of the criticism that the sentencing commission has leveled against these specific offense characteristics in 2G2.2, the judge should provide better information as to her reasoning about it. I mean, Judge Kendall raised the guideline level and specifically mentioned after the government argued how horrific it was in mitigation and in aggravation. And she goes down 31 months, right? But that's not my point at the moment. She argues that the particular images of children under a certain age or that involve sadistic or sadomasochistic images are particularly horrific, and she quotes from letters and everything else. And the sentencing commission suggests that that analysis is flawed because it really doesn't go to the heart of the offense and the offender conduct. In terms of my defendant, my client, there was no indication as to the number of such images that he had. He had actually provided the district court some information that those images were not of particular interest to him, and that his fantasy involved another particular area of an age group that was significantly older. But Judge Kendall focused that he should be more severely sentenced because, for all we knew, there were one or two images out of 16,000, which the sentencing commission, through its analysis, has indicated almost anybody can download. If you download some guy's folder that's got 5,000 images in it and you're looking for a particular interest, you're probably going to get one or two of these horrific images of very young children. And I think Judge Kendall should have more adequately addressed these kinds of issues. I mean, it strikes me, I mean, the sentencing commission has asked the district judges, well, the sentencing commission has told the district judges that the current guidelines are very questionable. It goes along with the fact that they should not be presumed reasonable. The sentencing commission has specifically said go out there to the district judges. Here are some suggested potential new offender characteristics that we are considering, and apply 3553 principles, which are also the foundation for the guidelines, and then come back, render your decisions, tell us your analysis. The appeals courts will decide and review that, and overall that information will all be turned over to the sentencing commission, who then can decide maybe a way to provide, as the sentencing commission calls it, a more wholesale approach to determining how these specific offense characteristics should play into an appropriate sentence. As it stands, the sentencing commission has suggested that it does not differentiate. I mean, we have sentencing guidelines, these specific offense characteristics, I believe are close to 20 years old, in a time when the world was much different, and most of the child pornography was not distributed by computer. But I think Judge Kendall, there was a lot of information in front of her, a lot of which she could have done with it, but she pretty much down the line just said, well, this is what the guidelines said. She didn't say it that way each time she referred to it, but she referred to horrific images. She referred to the number of images. And those, in the light of the current situation, are not an adequate analysis, I think, of the 3553 factors. Okay. Thank you very much. Mr. Fullerton. Good morning. May it please the Court. The district court did not err in sentencing of Mr. Hancock. In fact, it's not clear at all what the district court should have done differently. The district court properly computed the guidelines. There's no dispute about that. The district court entertained, considered the arguments made by Mr. Hancock at sentencing. Those arguments were criticisms of the guidelines as a policy matter, namely that they resulted in overly harsh sentences, they were outmoded, they weren't a good reflection of the defendant's behavior in the case. But the fact is that the district court did consider each of those arguments, and other than agreeing with the defendant about his arguments, it's not clear what the district court should have done in addition to what it already did. For example, on the volume of images, the district court said, well, that's an argument that's possible as a mitigating argument, but it wasn't clear from the evidence in the case that, in fact, that's what had happened here, that Mr. Hancock had received the 16,000 images of child pornography, all in one lump, or two lumps, or something like that. The district court was willing to entertain that as an argument in mitigation, but didn't think it was backed up by the facts. The district court recognized a type of image as the prepubescent children, and images of sadomasochism, that counsel was offering that as an argument in mitigation, that those are just the type that you get if you're collecting child pornography. The district court didn't consider that to be mitigating, and in fact found that to be quite aggravating, that the defendant was willing to possess and collect really horrific images. She was not required to agree that that was a mitigating factor, a mitigating circumstance, but the district court did consider it. One of the arguments the defendant made as to the wisdom of the guidelines, or the misdirection of the guidelines, had to do with looking at whether, instead of focusing on the factors that the guidelines set forth, the defendant argued that instead the district court should focus on whether the defendant had cataloged his collection, had cultivated his collection of images, which would show whether he had an extensive involvement with child pornography, the nature of his interest, and so on. And the district court did consider that argument, and explicitly found it was mitigating. That was a circumstance in which the court agreed with the defendant. So, in all of these criticisms of the guidelines as sort of a policy matter, the district court adequately considered them, adequately explained its reasons for rejecting those arguments, and in at least that one circumstance, found it was in fact a mitigating circumstance. What's beyond that, not clear at all what the court should have done. In fact, the court did go below the low end of his guideline range, and impose a sentence of, I think I said in the brief, 35 months, but in fact it is 31 months below the low end of 120 months. That is a sentence that was not arrived at through procedural error, and we ask the court to affirm that sentence. Okay, thank you very much. Anything further, Mr. Sullivan? Yes, just briefly. The government very correctly indicates that, well, there were questions about how the defendant got these 16,000 plus images, over what period of time he got them, what type of images he got overall, I would even suggest what percentages of them, or what number of them were these horrific, very young children images, what percentage of them went to other particular sexual fantasies. The question is, and why, they complained that we did not provide, or it sounds like they're complaining that we did not provide information as to how these things happened, and the judge didn't believe how these happened. We didn't control the database. We get very limited access in the district court to the discovery in a child pornography case. I saw no cataloging of, they say there's 16,000 images, they listed two of them in the indictment, or in the information in charging. The only place I can ever go see the images is over at the FBI offices, and I do not know, they do not tell me which ones they believe are these horrific images. They do not tell me from the data on the computer over what period of time they were collected. The only evidence there was of that was provided. And you made that request of an analysis? Did you make that request, Mr. Sullivan? No, Judge, what I provided in response instead was Mr. Hancock's affidavit as to when he started collecting and when he started and what particular was in his collection. But the government made no response to Mr. Hancock's affidavit. It was untrue. Okay. Thank you very much. And you were appointed, were you not? I was. We appreciate it very much. Thank you for your help to your client, the court. Thanks as well to the government.